Ford, J.
It has been decided, after argument in the Supreme Court, and upon full advisement, that James Popino and Peter Popino took estates tail under the devise in their father’s will. According, therefore, to James Popino’s estate or moiety in law, it descended, at his death, to Wade Popino, his eldest son, by the force and nature of
*60 the very estate. It is true that James had sold the estate, .as far as lay in his power, by a deed of conveyance, to Huddy; but more than this deed was necessary, in order to bar the heir. He should have suffered -what is called a ■common recovery; in fact there is a covenant in the deed that he would do so; buth parties knew the necessity of it, .and at this day we are ignorant of the reasons or considerations on which they waived it. Suffice it to say, there is no evidence of such * fine being ever levied, nor any ground in law to presume it was done. It is likewise true, that James Popi-no warranted the estate to Huddy; but this is nor sufficient of itself by law to bar the heir. Neither is the heir’s right of entry tolled by a discontinuance of the ■estate tail, or so taken away as to prevent him from maintaining an ejectment at law for the property in this state. Hence it follows, that Huddy, and persons claiming under him, had a right to the land that was indefeasible during .James Popino’s life; but at his death the estate returned to Wade Popino, the eldest son of James, who was an infant at the time, and also died in the year 1794, under the age of twenty-one years. Upon his death the estate descended, under our statute, to his three brothers, Samuel, George and William, and his sister, Mary Truss, who are, in fact, the plaintiffs in this suit; for though Samuel is not named among the plaintiffs, having himself died in the year 1803, yet his only child John is named in his place, who was born in 1802, and was an infant about a year old at his father’s decease.
The last objection against the plaintiffs is, that they have not sued their action within the time prescribed by law, and .are barred by the statute of limitations, which allows only twenty years. But the statute has a saving clause in favor of infants and femes covert, to this effect, that the time ■during which one is an infant shall not be reckoned against him; and so likewise of a feme covert or married woman. Now Mary Truss was a married woman, and is so still, *61 therefore she is not barred. And as to the other three plaintiffs, if you do not reckon time against them while they were under age, you will find they have prosecuted the action within twenty years respectively after their titles accrued. There is nothing shewn in law, therefore, to prevent the lessors of the plaintiff from recovering the estate of their ancestors.
L. 3. Stockton 6; Southard, for the defendant,
and in support of the rule for a new trial. To prove the fifth reason assigned for a new trial, they offered to read the affidavits of four of the jurors, shewing that one of the jurors communicated to his fellows, after they had retired to consider of their verdict, some important fact, which operated upon their minds in making up their verdict.
Wall, objected to the reading of these affidavits, and cited 2 Bl. Rep. 803. 4 Bos. & Pul. 326. 1 Hen. & Mun. 385. 4 Bin. 155. 4 John. Rep. 487. 15 Ib. 317. 1 Term. Rep. 411. Coxe’s Rep. 32, 151. 1 Pen. Rep. 389. 2 South. 486.
L. H. Stockton <§• Southard contended,
that the affidavits were admissible. They said that the rule relative to the admission of the affidavits of jurors went no farther than *62 this: “that the court would not permit a juror to prove that which, if proved, would compel the court to punish the juror, or which would criminate himself or subject him to punishment.” But that the affidavits now offered did not impeach the jury, or shew anything erroneous or improper in the conduct of the jurors, and cited 1 Hen. & Mun. 385. 2 Term Rep. 281. 2 Bl. Rep. 1299. 15 John. Rep. 87. Coxe’s Rep. 162.
*61 The jury found a verdict for the plaintiff. A rule was obtained to shew cause why the verdict should not be set aside, and a new trial granted; and the following reasons were filed:
I. That the verdict is against law.
II. That the verdict is against evidence.
III. That the judge admitted unlawful evidence.
IV. That the judge made an unlawful charge.
*V. That one of the jurors unlawfully gave evidence to his fellow jurors, after they had retired to consider of their verdict.
R. Stoekton, in reply.
Kirkpatrick, O. J.
The majority of the court think that the affidavits cannot be admitted; there is no case to .support it — all the cases are the other way. The difficulties which it is supposed will result from the rejection of these .affidavits can have no weight, and the remarks upon this part of the argument would apply with equal force to all those cases where affidavits of jurors have been rejected. Besides, the effect of the admission of these affidavits would •certainly be to criminate the jurors themselves. An attaint would have lain formerly for founding a verdict upon the evidence which the affidavits state that the jury received, as well as for any other cause; and they are just as reprehensible now for deciding upon this evidence.
Ford, J.
A juror is sworn to give his verdict according to evidence. When he comes into court and says'he did not find his *verdict upon that evidence, but upon facts which were related by one of the jurors in the jury room, it is a high misdemeanor, in foro eonscientice it is perjury. He raises against the other jurors a scandal, and impeaches their character. The affidavit, therefore, of one or of four •of them cannot be received.
Eossell, J.,
thought the affidavits admissible; many ■cases might occur where they ought to be admitted, and there was no other source from which the information they contained could be derived.
Affidavits rejected.
*63 The argument upon tlio other points proceeded.

1. II. Stockton <§■ Southard,

in support of the third reason assigned, said that the judge at the circuit decided erroneously in admitting the plaintiffs to read the copies of the deeds in evidence, without having proved them to have been in possession of the defendant-. Gilb. Pv. 95. The deeds were proved to have been in the hands of the defendant’s counsel, at Trenton, and not in his own possession ; and that the service of notice to produce them, on his attorney in F5ale-m, was not a sufficient service upon the counsel, and would not authorize the introduction of the copies in evidence ; and that if a party upon whom a subpoena duces tecum is served refuses to produce the papers, it did not enable the party to give copies in evidence.
In support of the fourth reason, they contended — 1. That the words of the will did not convey an estate tail (as the judge had charged the jury); that the estate tail never vested, but that the eldest son took the whole estate, as heir at law. 2 Dal. Rep. 317. Willes Rep. 141. 2 Pr. Wil. 741, (673 old edition).
2. That if the words of the will did convey an estate tail, yet that there were circumstances from which a jury might draw a conclusion that a fine and recovery had been levied, and the estate tail barred thereby; and that the judge was wrong in saying that there were no circumstances from which the jury might draw such a conclusion, and cited, 1 Dal. 428. 5 Jac. L. D. 280. 2 Lil. Abr. 440. Gilb. Law Evi. 102. 12 Vin. 123, A. 156. Rol. Pep. 132. Peak. Evi. 22.
Wall and P. Stockton, contra.
As to the reception of the copies of the deeds in evidence, they said it appeared in evidence that the original deeds had been produced at the circuit court, * upon the trial of the present plaintiffs against Cook, who claimed under the same title as this defendant, M’Allister, did (viz. the Euddy trial). The *64 same attorney was concerned in that cause as in this of M’Allister’s. Cook was in possession of the deeds; but whether they belonged to him or others, did not appear. They were produced by Mr. Jeffers, who was the attorney for both Cook and M’Allister; and the plaintiff, in order to have the benefit of these papers at the trial, gave a notice to Mr. Jeffers to produce them, and also a subpoena duces tecum to Cook, the defendant in the other cause. The deeds were not produced, and the question was, whether the plaintiff had laid sufficient grounds to enable the plaintiff to read the copies of them ? They contended, that the admission of these copies was legal, for that the possession of them by the defendant’s counsel was to be considered, both legally and potentially, as the possession of the defendant himself, and that M’Allister had as much interest in the deeds as Cook, as they both claimed under them.
As to the objection, that the will did not convey an estate tail, they said, it had already been solemnly decided in this court, and they declined arguing it.
As to the objection to that part of the judge’s charge which stated that there was “ no evidence of a common recovery, or any evidence from which the jury could draw such presumption,” they said, the charge was right, for that the single circumstance of continued possession under a deed of tenant in tail was not a sufficient ground for such 'presumption, (2 Bur. 1066,) and if it was, that presumption was completely rebutted by the bond of Jacob Hoover to-"Wade Popino, dated 23d November, 1771.
Kirkpatrick, O. J.
For the setting aside of this verdict, there are five reasons assigned. The fifth, which complains of the conduct of the jury, has already been disposed of. The first and second, alleging that the verdict is contrary to law, and contrary to evidence, depend upon the third and fourth, which complain of the admission of unlawful *65 evidence, and of a mistake in the delivering of the law to the jury, upon the trial. These two latter, therefore, are now only to bo considered. And—
1. As to the admission of unlawful evidence. The plain-till', on the trial, liad offered evidence to prove, that one Peter Popino, being seized and possessed of a certain plantation and tract *of land in Manningtoh, of which the premises in question are part, in the year 1752, made his last will, by which he devised the same to his two sons, James and Poter, in tail, as tenants in common, with cross remainders; that upon the death of the said Peter Popino, the testator, his widow continued in possession of the said plantation for some years, and that after her death, James, the son, took possession of the samo, lie then stated, that James Popino, ono of tho said sons and devisees, and Mary his wife, and Peter Popino, the other son and devisee in the said will named, and Mary Popino, the widow of the said testator, by their deed, dated in 1764, sold and conveyed tho said plantation, in fee, to one Joshua Huddy, who entered and became possessed thereof; that by virtue of a judgment and execution against Huddy, the same was sold by the sheriff of Salem to one Whitton Oripps, who was the plaintiff in that suit; that Whitten Oripps conveyed to one Edward Test, who conveyed one-half of the same to one Aaron Oook, and the other half thereof, which contains tho premises in question, to one William Smith, who again conveyed his half to one Michael Hoover, under whom the defendant holds. «
In order to make out these facts, the plaintiff proved, first, that he had served notice on the defendant’s attorney to produce, on the trial, the deed from the Popinos to Huddy, the deed from Test to Smith, and the deed from Smith to Hoover. These deeds not being produced by the defendant, the plaintiff exhibited certain papers purporting to be copies of them, and having proved, by a witness called for that purpose, that the papers thus exhibited are true *66 copies of certain original deeds which were given in evidence by one Aaron Cook, in the trial of an action of ejectment against him. by these same plaintiffs, for part of the same Popino farm, offered to read these copies in evidence. To this the defendant objected, not because the fact proposed to be proved was. immaterial, nor because the deeds themselves, if produced, would have been unlawful or incompetent evidence, for this was not pretended, but upon the ground, as the case expressly states, that the original deeds had not been proved to be, or ever to have been, in the possession of the defendant. This objection was overruled by the court, and the copies admitted to be read. And this is the ground of the motion for a new trial on this head.
*The giving of the notice to the defendant to produce these deeds, was not a necessary measure, because there was no positive presumption of law that they were in his hands ; but it was a just and cautionary measure,, because, if such deeds existed at all, being the title deeds of the defendant, they might reasonably be supposed to be either in his possession or within his power; and it was but right that he should have an opportunity of producing the originals, rather than to be bound by copies, or the proof of contents, which are always liable to error. But inasmuch as it wr'as not proved, neither by the testimony of witnesses, nor by the presumption of law, that the deeds were either in the possession, or within the power of the defendant, the plaintiff could take no advantage from such service of notice and non-production of the deeds. He is by that means put into no better situation than he would have been without it.
How then does the matter stand ? The plaintiff is making out his case. He is claiming under the entailment in Peter Popino’s will. It is material for him to shew that the defendant came in upon the title, and holds under a deed made by James Popino and Peter Popino, the tenants in tail, and that therefore he can have no other, or greater estate in the premises than they had. He is to shew this, according *67 to the rules of law, by the highest evidence the nature of the thing will admit of; not absolutely, for then a copy never •could be given in evidence, the original being higher; nor could circumstantial or presumptive evidence ever be received, because positive is higher ; but he is to shew it by the highest evidence which, under all the circumstances of the case, the law presumes to be, or ought to be, in his power. This is the pith and the reason of the rule. The copy is not received, because, by the presumption of the law, the original is, or ought to be, in the hands of the party that would produce the copy, and therefore it is not the best evidence in his power; but remove this presumption, and the copy, duly proved, is always evidence, with this one condition, that if by presumption of law the original is in the hands of the adversary, he must have notice to produce it. JY L. Evidence 95.
Now, can the law presume that these deeds which conveyed away, and handed down his inheritance to strangers, and by virtue of which that inheritance is still held against him, are, or could possibly have been, in the hands or possession of the plaintiff ? *Oertainly not. Can lie then [*56 divine, while they are in the hands of his adversaries, of whom there are many, and while they are shuffling them about from ono to other, from client to attorney, and from attorney to counsel, and then back again, I say, under such circumstances, can the plaintiff divine in whose hands to find them, so that he may safely serve, and rely upon, a notice to produce them ? and if he could so divine, could he possibly produce proof of such possession in a court of justice? I think it canuot be pretended. The deeds, then, not being presumed by the law to be in the hands of the plaintiff, but of sorno one of his adversaries, though not of the defendant in this cause, he had a right to prove the facts alleged by any inferior evidence in itself otherwise la wful, which would make the matter manifest to the jury. And, of this inferior kind of evidence, copies compared and sworn were certainly *68 of the highest order, and the least liable to error. Upon the strictest construction of the rule, therefore, that the party making an allegation must prove it by the highest evidence the nature of the case will admit of, those copies were rightly admitted.
But even supposing a doubt might be raised as to this, what would it amount to ? After these copies had been read in evidence, the defendant sets up title in himself, deducing it, through this Hoover, from this very deed of the Popinos; and, to get rid of the entailmeut, relies upon the covenant for further assurance, and the legal construction and operation of it, under all the circumstances of the case; thus recognizing and establishing, I think, beyond all doubt, the existence and validity of these deeds, and resting upon them as the foundation of his title.
To set aside a verdict for such a cause, and under such circumstances, would be a new proceeding in the law.
2. As to the mistake, at the trial, in delivering the law to the jury.
In the deed from the Popinos to Huddy there is a covenant, that they shall levy a fine and suffer a common recovery to bar the entail ; and, though no such fine and recovery were found of record, it was insisted that the jury had a right, and, under all the circumstances of the case, ought, to presume that such fine had been levied and such recovery suffered, and so, that the fee simple had vested in the grantees. It was not pretended that the covenant itself, or any remedy upon it, or equity arising out of *it, could enlarge the estate, but. that a presumption might be founded upon it, that the things had been actually done which had been covenanted to be done, and so that the estate was enlarged, and the entailment barred.
The judge who tried the cause presented the whole case to the jury, in a very concise and lucid manner, and, among" other things, observed to them, “ that there was no evidence that a fine had been levied, or a common recovery suffered, *69 nor any ground in the law to found a presumption that this had been done.” And this is the mistake complained of in delivering the law to the jury.
It is not pretended by the defendant, nor indeed could it be pretended, that upon a mere covenant by tenant in tail to levy a fine and suffer a recovery, the law will, of course, presume the fine to have been actually levied, and the recovery suffered. The presumption, if such things can be presumed at all, must rest upon facts and circumstances arising after the covenant was made; and facts and circumstances, too, which could not, in the scale of human probabilities, have taken place, unless such fine had been levied, and recovery had. The facts and circumstances, however, which will support such presumption in particular cases are as various as the cases themselves. In the one before us there is nothing set up or insisted upon as ground of presumption but long and continued possession and enjoyment, under this deed of the tenant tail, without render or acknowledgement. And, though it must be admitted that the deed is of pretty ancient standing, being dated in 1764, yet it is to be observed, that during the life of James Popino, who was the survivor of the two brothers and tenants in tail, and who must have died, according to the testimony, somewhere about the year 1790, the grantees under this deed had a perfect and indefeasible estate, which could be disturbed neither by him, nor those coming in after him; for a deed by tenant in tail in fee simple, as this was, gives a perfect estate during the life of the tenant in tail, and it can be defeated only by the coming in of the lioir after his death. No fair presumption, therefore, can possibly be drawn from their remaining in the undisturbed possession up till that time; for whether the fine had been levied, and the recovery suffered or not, the possession must have been, the same.
But further. There is in the case, if I rightly understand it, *pretty strong evidence, nay may I not rather say, *70 conclusive evidence, that up till that time, that is to say, till the death of James, such fine and recovery could not have been had.
It appears, not only by the testimony of Shreve, the witness, but also by certain bonds, executed in due form of law, that, in 1791, soon after the death of the said James, and soon after the inheritance was, according to the form of the gift, cast upon his eldest son Wade, he being then an infant, Adam Cook, who had purchased, as before stated, the one half of this plantation, and Jacob Hoover, the son of Michael, who had purchased the other half, entered into a negotiation with the said Wade and his guardian, and by their bonds expressly recognizing his title under entailment in his grandfather’s will, agreed to purchase of him these very lands, and actually gave their bonds for the purchase money, upon condition that he would convey to them when he should come of age, which would be in 1794. Wade died before he came of age, and did not make the conveyance, and so these bonds were not paid. But still this is conclusive proof that no fine and recovery could have been had in the lifetime of James; for it is impossible that these persons, for whose benefit such fine and recovery must have been had, should have been ignorant of them. If this be so, then, upon the death of James the estate descended, accordingfto the form of the gift, to his eldest son Wade', and, by the force of the statute, became a fee in his hands, and as such descended to his brothers and sister, who are the lessors of the plaintiff. Since the death of James, therefore, there could have been no fine and recovery, for of fee simple lands no such mode of conveyance was ever known in New Jersey.
I feel the less reluctance in saying, that this rule for a new trial must Joe discharged, because it is manifest, from the notoriety of the fact in the neighborhood, from the transactions that were publicly had, and from the warnings that were given, that the purchasers of this Popino estate, *71 from, the beginning to the end, must have been apprized of this entailment, and have trusted to the force of their numbers and of their money to put down the laws of the country with respect to it, and to defeat this poor family of their inheritance.
In my opinion the rule must be discharged.
Rule discharged.